Thank you, Your Honor. Good afternoon to the Court. T.J. Madigan for Gulf Coast Bank & Trust Company. May it please the Court. The legal issue before the Court today is obviously personal jurisdiction. But more specifically, the issue is whether Designed Conveyor System, DCS, which has voluntarily designated a registered agent in Louisiana, is subject to personal jurisdiction in Louisiana on a claim by a Louisiana state bank that presents multiple contacts with the state of Louisiana. And the issue arises in the context of a factoring arrangement. In this factoring arrangement, you have Gulf Coast, which is the assignee, Vinex, the assignor, and DCS, which is the account debtor. DCS is obviously defendant and Gulf Coast is the plaintiff. The facts involved in this factoring arrangement show that there are a number of connections and contacts with the state of Louisiana, which is the form state. Gulf Coast is a Louisiana state bank and Gulf Coast is providing financing in this arrangement. One of the most important facts with respect to DCS is the fact that DCS voluntarily filed papers with the Louisiana Secretary of State designating its registered agent for service of process in Baton Rouge, Louisiana. All right. So I want to hone in on consent jurisdiction for a moment and put aside any specific jurisdiction contact. I know you're making both arguments, but let's assume arguendo you can only win on consent or not. Let's just assume that arguendo for my question. It seems to me your argument is the U.S. Supreme Court in Pennsylvania Fire and others said if a state construes its statutes of doing business to require that consent, that by appointing a registered agent, doing business, all that, you've consented, then that's good enough. And you're arguing Louisiana, in fact, does require that based on the case law. My question is, does it matter that Louisiana is a civil law jurisdiction? Because it seems like the arguments are based on common law jurisdictions, and I think Louisiana might be a little bit different. So tell me your thoughts on that. Yes, Your Honor. Thank you for the question. I don't think it makes a difference that Louisiana is civilian. The issue revolves around statutory interpretation in Title 12, 1308, Title 12, 1347, which say that when you consent to jurisdiction or you register a registered agent, you have to register an agent for service of process in the State of Louisiana. You're consenting to jurisdiction in the State of Louisiana. Well, I understand your arguments that you can construe it that way, but those words are not actually used, and they're not actually used in any of the forms that a business signs to become registered to do business. So I understand the concept of, well, if it's treated like all other corporations in Louisiana, then that's the same thing as consent. I mean, I understand the statutory construction argument, but the word consent is not actually in there, is it? No, Your Honor. Okay. And if the U.S. Supreme Court has required that it be the State's construction of its statutes, then don't we need a State construction of the statute that would be binding on the State? And Louisiana's dicta, if the dicta would work in another State, certainly doesn't work in a civil code State where you need more than just dicta from a Supreme Court, in a State Supreme Court, right? Yes, Your Honor. I think I understand your point, and I hope I'm addressing your question when I say that Louisiana Supreme Court in Phillips certainly unequivocally said that appointing a registered agent for service of process equates to consent to jurisdiction. In that case, the – Does facilitate mean that? I'm sorry, Your Honor? Does facilitate mean that? Facilitate. I'm sorry, I didn't – If the court says it facilitates litigation, does that mean it consents? The exact quote from Phillips is, a principal consequence of designating an agent for service of process is to subject the foreign corporation to jurisdiction in a Louisiana court. Okay. And that does not actually use the word consent. But also what I think is kind of a question in that case. I mean, and in fact, the holding in the case is that this party that had registered to do business in Louisiana but wasn't a Louisiana corporation was not subject to a third-party subpoena in Louisiana. So it's kind of the opposite of this notion that you're exactly the same as a Louisiana company because a Louisiana company would be subject to a subpoena in Louisiana without a lot of la-di-da. Your Honor, I certainly recognize that the statement that I just quoted from Phillips was not dispositive of the issue before that court. But what the court was doing was interpreting Article VI of the Louisiana Code of Civil Procedure and the other statutory law, the other positive law in Louisiana. And I also think it's important to point out that there are a number of Louisiana cases that follow Phillips. You have Judge Fallon following Phillips in the Hebert case. You have the Gazier case, Gazier v. Columbia Transport, which is the Fourth Circuit case. So you have this body of case law. It's what's building up to what we call in civilian jurisdictions a jurisprudence constant. You're having decisions follow decisions. It's sort of our version of the law. Yeah, but on the Fifth Circuit, I'm not bound by a district court opinion. I'm not bound by a Fourth Circuit opinion. The constante here, I don't know if you meant Fourth Circuit of Louisiana, well, even there, the constante is the Supreme Court following its own jurisprudence. And that, I don't see that here. It wasn't before them in the Phillips case, and apparently hasn't been before them since. So it seems to me as a matter of civil code law, Louisiana has not spoken to this. And unlike the eerie guess and all that we do, if we're following Pennsylvania Fire, even assuming argumento, it survives international shoe, it requires an actual holding from the state Supreme Court, not simply an eerie guess that this is what the Supreme Court would do. I understand your concerns, Your Honor. And all we can do is look at the cases that exist before us. What we have, I think, is a very clear, unequivocal pronouncement from the Phillips case, from the Louisiana Supreme Court, of course, recognizing that that's not dispositive of the issue before that court. We have cases following it, including Judge Fallon non-binding. Again, I'm not suggesting that it is. The Fourth Circuit in the state of Louisiana, I think there's another case that actually says that it's not going to follow Phillips to the fullest extent on those particular facts, the Thomas case that the Louisiana Supreme Court, the very emphatic statement, you have Hebert at the Eastern District of Louisiana, Judge Fallon. You have the Gauzier case from the Fourth Circuit, and they're all pointing in the same direction. But don't we have cases to the contrary? We have a middle, well, we have this case, but we also have other Middle District of Louisiana cases coming out the other way. Yes, Your Honor, that's correct. So this constante isn't very constant. No, I'm just, I'm pointing out to the court that the weight of the jurisprudence, including a very emphatic statement from the Louisiana Supreme Court, is saying, I didn't read the first part of the quote, but the first part of the quote is, Phillips contends that CKB's having a Louisiana agent for service of process is enough to subject that corporation to the jurisdiction of a Louisiana court. And the sentence that follows that is, of course this is correct. And then it cites to Louisiana Code of Civil Procedure Article 6, 1235 and 5251. So it's interpreting the That, I would submit, is the most emphatic, clear statement from the highest court in the state of Louisiana. And I'm just trying to address your question. I mean, you know, and I appreciate that's the argument you have to make. I just think the problem is, that's the problem with dicta, is it isn't briefed, it's not before the court. They're distinguishing something that's not before them, saying, well, okay, sure, yeah, then you'd be subject, but that's not the case we have. And unfortunately, we judges get ourselves in trouble when we do that, and that's why we have to be careful with that. But to me, that's, that would be hard in a common law jurisdiction to say that's for sure what the Supreme Court of the common law state thinks. But I just question it in a civil law state. But we've exchanged this, so I'll let you go on, unless my colleagues want to pursue this further. Would you tell us more of what you might have to support your position? Yes, Your Honor. And so we do have the Phillips case. We've covered that. And I think the Cowan case from this Court is also very important and very instructive. And just to your point, Judge Haynes, I think if you compare the Mississippi statute that was at issue in Cowan, it's very similar to the statute that we're dealing with here. So I think that's instructive. But what Cowan is teaching us is that where, this is state specific, and you need to look to the state, and where the state has spoken, and I submit with, subject to what Judge Haynes has pointed out, may be not a dispositive statement from the highest court, but certainly a very emphatic one. Where the state has spoken, you need to defer to the state. That's what the Nyarbo case teaches us. That's what the Pennsylvania Fire case teaches us. And I do think the facts are important here. I started to get into them a little bit, but I don't want them to get glossed over, because I do believe there are a lot of Louisiana connections here. Like I was saying, we do have a factoring arrangement. And that's really what this case is about. It's about a suit on an invoice acknowledgment agreement and a factoring arrangement. So, you know, these So talk to us about specific jurisdictions. So let's assume arguendo no consent, or that we don't read the consent the same way. You still think you win on specific jurisdictions. So talk to us about that. Right. I think there's sufficient minimum contacts. And I would suggest that in addition to the consent jurisdiction, so you look to consent, I think there is that here. But then you would have to do a determination about it, whether it's fair and reasonable. And I think the same facts speak to that. So for the same reason that the facts would give us minimum jurisdiction, they would also demonstrate that it's fair and reasonable. And you have a number of Louisiana contacts here, recognizing that this is not a tort case, where you have some elaborate series of events that play out, but it's a transactional case. And really what you have is paper going back and forth here. And what happened is you have four invoice acknowledgment agreements. This is not a one-off. This is a pattern and a practice and a course of dealings where Gulf Coast is providing financing as the factor in this case. And they send an invoice acknowledgment agreement, just like they're allowed to do under 9404 of the Uniform Commercial Code. And in order to do that, they're trying to make sure the invoice is good and to get companies like DCS, the account debtor, to agree that they have no defenses. That's a meaningful agreement. They're sending this saying, we have this invoice, we're about the fact that- But doesn't that hurt you? Because really DCS's transaction of business and doing business was with, and I'm just trying to remember the name, Vimex or Vinex, in Colorado. And as a courtesy, in essence, signing y'all's form and saying, yeah, yeah, everything's fine until it wasn't. But why is that purposefully availing themselves of Louisiana to sign off on a form you sent them as a courtesy really, I guess, to Vimex and not to, I mean, they weren't seeking your financing. DCS wasn't. They're just, they're overhearing this transaction in Colorado, blah, blah, blah. And then all of a sudden you guys send them this form and they sign it and, whoa, now they're subject to jurisdiction in Louisiana. Again, putting aside the consent issue. Respectfully, Your Honor, I would suggest that it's more than a courtesy, perhaps indirectly, but they need this financing to keep their project going. What's going on here is you have a voluntary choice by DCS to purposely deal with Gulf Coast in Louisiana. The form has a, identifies the wire instructions that the bank account is in Louisiana. They, in fact, wired money three times, three different times after executing this agreement and sending it back to Gulf Coast in Louisiana. The emails that issue very clearly say... What's your best case for the proposition that signing off on that, yes, yes, we do have this deal with this other company so the other company can get financing is enough to avail yourself, again, putting aside the consent issue, enough to avail yourself, purposefully avail yourself of the state where the factoring company resides. I think it is important that it is purposeful. And I think if you look at the last email that transmits the invoice acknowledgement agreement on the invoice that's at issue in this case, it doesn't come right back like the other ones. There's email traffic going back and forth. And that email traffic underscores the point of how important it is. You have, essentially, you hear crickets on the first one. And Vinex emails back to DCS and says, look, this is really important. We're not going to make payroll here unless you guys send this to us. And then they say, okay, well, now that you say that, and now that we realize our project may tank because of this, then, yes, here is your invoice acknowledgement agreement so we can get this money. It may be indirect. It's not money that's going into DCS' pocket. But it benefits DCS. And DCS is knowingly understanding that they need this money to keep their project. Okay. So what's the most analogous case you can cite to us? That's what I'm asking. I mean, a precedential case, that's what I'm asking for. I don't have a factoring case, Your Honor. I think the most instructive case is the Cowen case. But again, that goes to the consent jurisdiction. But on the specific jurisdiction, if we don't agree on consent, what would you, what would, if we're writing an opinion in your favor, what would be the big case we would cite to support that? I would say that you can look to Moncton and really juxtapose it against Moncton. Because in Moncton, it's all about the Cayman Island transaction. But if you say we're different here because we are in Louisiana, the agreement in that case is everything happens in the We're in Louisiana. Send us the money in Louisiana. It's a factoring arrangement. And the only facts that happen all go to and from Louisiana. There are no other facts. Keeping in mind, this is a factoring case on an invoice acknowledgment agreement. All right, counsel. Let's hear the other point of view, I suppose. Thank you, Judge. May it please the Court. Chris Raulston on behalf of the Appellee Design Conveyor Systems, LLC. If I may, I'll say DCS for short. We do ask that this Court affirm the decision of the District Court below as we've stated in our briefs. We believe that the District Court considered, not just in its original order, but in its thorough consideration on the motion for new trial filed by Gulf Coast, that the Court lacked personal jurisdiction. And it did so using what I think we've talked a little bit about, or I've heard the Court talk a little bit about already, the key decisions from the United States Supreme Court. And from this very circuit, and from some of the members on today's panel. As we all know, in this particular instance, and I just say it because it's an important part here, whenever a plaintiff is suing and trying to establish personal jurisdiction, the burden is on them at all times. And the Moncton Court said that, and I know Judge Southwick, you and Judge Rievele were on that panel. But that was an important part of the burden to show. It was also quite important, from what I've just heard, when looking at specific jurisdiction that Judge Haynes asked about, that the Court really isn't even going to give any weight to actions or activities that are initiated by the plaintiff. And that's certainly what happened here. Okay. So you're saying we don't count all of this exchange, even though it benefits DCS, to have Gulf Coast involved, so Vinex has money to pay their payroll and proceed on until they didn't, according to you all. You're saying that doesn't matter because it was Gulf Coast that contacted you. So nothing counts after that? Your Honor, I'm sorry. Let me just be clear that when Gulf Coast Bank sends an invoice acknowledgement agreement, for example, to DCS, the principal place of business in Tennessee, headquartered in Indiana, that that doesn't count. And I heard a lot of back and forth that there's these exchanges, and I think under Moncton, as well as the other cases, that those types of actions don't count towards establishing the purposefully directed activities towards the forum state. In other words, and just so I'm clear, when Gulf Coast sends a or sends some payments to Colorado, that that has nothing to do with establishing the specific jurisdiction that Your Honor asked about a little earlier. We don't even have to get there, because I don't think this is even as close as the Moncton case, for example, where there were wire payments being made into the state, where there were agreements and meetings that were occurring. But I do think, and two members of this panel were on that panel, so they'll know it better than me, but reading decisions like that, where this Court has said that activities that are initiated by the plaintiff don't count towards the specific jurisdiction, and specifically the pattern or the continuous activities that are directed toward the forum state, which in addition have to be connected to the lawsuit at issue. And I know this Court, not just in that decision, but in others, have pointed out that it's not just a mashed potatoes, or it's not a ball of it's all related. What we had here is, and Your Honor, I think, articulated this earlier, we've got a project in Denver, Colorado, by Vinex, a Texas LLC, involving DCS, an Indiana company with its principal place of business in Tennessee, and really having nothing to do with Louisiana. So Gulf Coast sends, and in the lawsuit, I know counsel said that there are three or four different agreements sent. This lawsuit is focused on one, and only mentioned one. Let me ask you this, because I understand the argument, if you were purely talking about specific jurisdiction, your argument would be they didn't purposely avail, they just purposely responded. But is there perhaps a concept of consent plus? So if we were to say, well, maybe having the registered agent isn't enough, you know, for something completely, somebody fell on the project in Colorado and are trying to sue in Louisiana, you know, maybe that wouldn't be good enough. But here, because we have the registered agent, and we have some connection, even if not super duper connection, that that's good enough. What about that argument? Your Honor, I would respectfully suggest that when we start getting into the blending, and we start getting into forming new types of ways of looking at the analysis, we've got to keep in mind what the Court said in Daimler, and even what the Court said this summer with a particular situation in California. I think we cited in the Rule 28J letter, the Bristol-Myers-Swibb case. But those are the types of situations where I think if we come back to Daimler, and the rules were stated there, and that this Court has faithfully adhered to, no, I don't think we get there. I don't think there is a consent jurisdiction. I think this Court said that. So you think consent, that Pennsylvania fire has in fact been overruled by International Shoe, and if it was still on life support, it was killed in Daimler-Chrysler? I believe that's effectively true, Your Honor. I do. But do we get to say that? I mean, the Supreme Court has made a point of saying they get to overrule their own precedents, and the rest of us are foot soldiers. How do you respond to that concept? Fortunately, Your Honor, I don't think this Court has to say that. I don't think we even come close here. I know that when we've looked at cases, like there's the Wench-Seamer case from this Court, again, that was, I believe, 1992. But that specifically considered, unlike DICTA and the OKC case that was mentioned, or the Louisiana Supreme Court case, I think it's Phillips-Petroleum v. OKC, specifically considered whether the registering of an agent or doing what a state corporate statute would require would subject a company to jurisdiction. And this Court said no, it wouldn't. They said there was no great weight to be given to that fact. But how do you square that with Cowan? I think Cowan is a different type of statute, and so I don't think that's even the same as what we have here. We don't have, for example, a state statute that says you register to do business in Louisiana and you consent to jurisdiction in the courts. I know Your Honor is aware of that because I've read the decision that has them. I think it's Scheer and Denver Book Publishers. In that case, a specific choice of law and a choice of venue provision wasn't enough. So how can just mere registering to do business in a state be? So I don't think you have to get into those other decisions because of the fact that, and again, this Court said it before, there's a big difference between doing what a state would require to be able to do business and even doing business. And I guess that goes back to your question, Your Honor. DCS was never doing business. It was never purposely directing activities. Well, then why did they keep registering and renewing their registration, you know, 41 days before this lawsuit or whatever the number is? Because that's what they would have to do, you know, if they were going to one day do business. And I don't think that whether we're looking at it under the general jurisdiction or a specific jurisdiction, we would get there. Your Honor, let me ask it this way. If merely consenting or registering to do business in a state would bring you within the personal jurisdiction ambit, particularly post-Daimler, would Daimler meet anything anymore? I mean, the Supreme Court said you have to be at home in that state. And this Court said in Moncton, it's very difficult to be at home unless you're buying homes in all the states. If you're buying homes in all the states? Well, metaphorically, by registering to do business. I don't think that's what the Supreme Court said in Daimler. They said it's very difficult. Normally, you're looking at principal place of business and where are you headquartered, where are you registered to do business, where were you formed, where was your place of incorporation. And I don't think that, first of all, I don't think we have to get there, but I don't think that would be consistent with what the Court said. And what this Court has said in the Supreme Court, why don't we have to get there? Is it because of the civil law argument that we were addressing earlier? Why don't we have to get to the question of whether Pennsylvania fire survives international shoot? I think it comes back to the 14th Amendment and I think it comes back to what the Supreme Court said. Well, the 14th Amendment existed at the time of Pennsylvania fire. It's an old case, but not that old. That's true. So the Supreme Court was aware of the 14th Amendment when they decided Pennsylvania fire in the 1920s, if I'm remembering the date right. And we're bound by the Supreme Court unless it's overruled itself. So the question is whether Schaeffer's comment that cases inconsistent with international shoot should be considered overruled, is that good enough for us as a lower court? Or are we still bound to follow Pennsylvania fire? And if we are bound to follow Pennsylvania fire, do you still win under the civil code argument that we were addressing with counsel opposite? I think so. And Judge, I don't, you're answering, trying to answer your questions. I don't think it comes down to Louisiana being a civilian jurisdiction. I don't think there's any reading of the Supreme Court precedents that would say, okay, it's different in every state except for if a state has its own law. I think that comes back to the principle that Now the civil code isn't about the U.S. Supreme Court's point. It's about if the U.S. Supreme Court's point in Pennsylvania fire is that if the state's highest court has construed its statute as consent, then that's good enough for us. And then how do we determine whether the state has done that? That's, to me, where the civil code point comes up and I think is actually kind of important. Because dicta in other states may be binding. But I know it's not in Louisiana because you have this whole Constante point and even one case might not be enough. What's your answer to that? If I can, Judge, I guess, and I'm hoping that I'm going to answer the court's question on this, I think that when you look at, I think that it's important that we remember the construct, which is general jurisdiction and specific jurisdiction. To be clear, I don't believe there is any consent jurisdiction as we stand here today, given Daimler. And I know the court asked counsel about some decisions, which I believe all of the district court decisions, which are obviously not binding, were pre-Daimler. And I just think that whether you say that the court's refined its view or it's changed its view or what have you, we have to keep in mind what Daimler versus Baumann has said. And then, again, this summer when you had a particular state statute in California and, once again, reversing the Court of Appeal, saying the 14th Amendment governs and we want to make sure that we're looking at the types of contacts, the types of minimum contacts that would be fair and reasonable, substantial justice. And so I come back to that, Judge, and I hope I'm answering your question, because I think that that applies whether you're in general jurisdiction or specific jurisdiction. And in this particular instance, let's say, Your Honor, that there was the mere registering to do business in Louisiana was somehow given more weight than this Court said it would be in the Mensch decision. What do we have to tie it to, to the systematic and continuous? Well, I guess the argument, if I were your opponent, that I would make is, I mean, you can waive personal jurisdiction simply by failing to raise it at the right time, like first. You know, in Texas, for example, if you even write a letter to the court saying, you know, what day is it before you file a special appearance, you're done. And in federal court, it's not much different than that. You have to file your 12B motion pretty promptly or you're done. And so if that's the case, that's a form of consent, in essence. Maybe you have no ties to Louisiana, but you want a nice trip to New Orleans out of it, so you decide to not argue jurisdiction. And then guess what? You've consented to it. So there's no doubt in my mind that that form of consent isn't going anywhere, the waiver form of it. And so it isn't too much further from there to say, well, if you want to do business in our state, you've got to consent to jurisdiction. And then he argues that's what you all did. Answer that. And Your Honor, I would respectfully respond that registering to be able to do business in the state is not the continuous and systematic context. It's not the purposely directed activities toward a state that also are tied to the events giving rise to the lawsuit. What are the events giving rise to the lawsuit? Vimex, the Texas LLC, didn't pay its debt to Gulf Coast. Vimex isn't a party to this suit. DCS in Tennessee, incorporated in Indiana, never came to Louisiana, never purposely directed the types of activities that this court has found. What happened to Vimex? Are they gone? I honestly don't know. It seems weird to me. You all are spending this degree of money, and you argument in the Fifth Circuit, and all this on a case of this size, if Vimex is still even potentially viable. It's irrelevant to the jurisdiction question, I agree, but it's strange. I confess, Your Honor, I don't know, and we don't think that this should have gone that far. I realize you defend what you're given. I get that. I believe, Your Honor, that Judge Brady looked at this thoroughly. I think he gave the benefit of the doubt on the arguments. I believe he did it again in a thorough ruling, and I believe that his ruling stands up and closely adheres to, not just the Supreme Court precedent, but the precedents over a period of years from this very court. I think that whether you look at this on a general jurisdiction, I don't think it's close. I don't think there's any way that you can establish that DCS was at home in Louisiana. I think that this court in the Moncton case was right to say it's, quote, very difficult to be able to establish general jurisdiction absent that state being, or the forum state being the place of incorporation, or the principal place of business. If we look to the specific jurisdiction, again, Judge, I just respectfully say, putting aside the registering the business, I don't think you have the link, which I think this court has been faithful in adhering to, that would also tie in to the other elements of the specific jurisdiction analysis. Does it make any difference that this is an LLC in all of this analysis? Because we've treated LLCs a little bit different in terms of, for example, who you look to for diversity. You've got to dig down and find the members, and are they diverse, and all that. Does that make any difference in this whole analysis at all? Your Honor, I'm unaware of any possible distinction from all the cases that I've read that would have any bearing on the personal jurisdiction analysis. I say that just having read the decisions from this court, and from other circuits and the Supreme Court. I don't think that has any bearing here. I also, for the record, don't believe that Louisiana, being a civilian jurisdiction, weighs in favor of jurisdiction here any more than it would in Mississippi. No, I think it weighs against it. You keep arguing with me on that, but it actually helps you. I just wanted to be clear on it, Judge. I think the way that Judge Brady dealt with the analysis in Phillips Petroleum, and several other reasons make that a non-issue. I just wanted to be clear on that, Your Honor, because I was asked about it. I believe, and having worked for Judge Fallin, I've been told by him that sometimes silence says more than more words. At the end of the day, we believe that Judge Brady was thorough on this, and we believe that there is neither a basis for general jurisdiction or consent jurisdiction, and that he was right to dismiss this case for lack of personal jurisdiction under the precedent of Daimler, of Moncton, and of the Mensch, a similar case. We'd ask that this court affirm. Unless there are any other questions, I will defer. All right, counsel. Thank you. May it please the court. I just want to supplement my answer. You asked me the most factually analogous case, and I looked through my notes, and I want to preface it by saying that our main argument here is consent-based jurisdiction, but in recognizing that this, just to address your question, the Central Progressive Bank versus Kuntz case, and the Consolidated Companies, Inc. versus Kern cases are both Eastern District Louisiana cases, 2008 Westlaw 5264260, that's Central Progressive, and 2000 Westlaw 1036186, that's the Consolidated Companies case, and those are both analogous in the sense that they involve guarantees. Now I recognize that DCS is not a guarantor here, but I believe it's a pretty good analogy because they're getting a financial benefit from us funding their sub on a project, and there's back and forth that I believe draws a pretty close analogy there. I also want to make sure, because there's a lot of discussion of Daimler, just switching gears that make the point, I think it's made in our briefs, but I want to make it here, that Daimler should not be overstated, should not be stretched beyond its facts, because it's a very limited factual scenario. But how about Bristol-Myers? I mean, wouldn't that be a very huge hole in that if doing, registering to do business is good enough? I feel fairly comfortable Bristol-Myers is registered to do business in every state, and certainly California, where they have major entities there. So why are we having this big fight, go to the U.S. Supreme Court and all this, if it's just a matter of a registered agent? I don't believe, and I would have to go back and check to be absolutely 100% sure, but I do not believe that Bristol-Myers addressed the issue of appointing a registered agent for service of process and whether that constituted consensual eviction. So they just had a bad lawyer. They should have hired you. Maybe so. I appreciate the compliment. Could it also be an issue that it's clear that that would not be enough, it wasn't worth even talking about? If they had addressed it, they would have had to take up whether they needed to overrule Pennsylvania Fire in Nairbo, and no opinion from the United States Supreme Court has done that. I think that's important, and I think if there's, I'm going to give two quotes from Daimler that I think are very important. The first one is, it matches up with Cowan. Federal courts ordinarily follow state law in determining the bounds of their jurisdictions over persons. So that's consistent with Nairbo, and that's consistent with Pennsylvania Fire, and that's consistent with Cowan, and that points you in the direction of the Phillips case, which says that where you appoint a registered agent in Louisiana, recognizing that it's not dispositive of the issue before that court, of course, I've said it a few times, I just want to make that clear, that that constitutes consent to jurisdiction in Louisiana. Now, if there's a question, may I be so bold to suggest that we should certify it to the Louisiana Supreme Court? I think Phillips is clear, I think the law following it is clear, but if there is any question, maybe that's something that... Yeah, but I read Pennsylvania, again, I don't see this as an eerie guess case. That's where you certify a question, where you're making an eerie guess and you just can't guess well enough. I see Pennsylvania Fire as saying, at best for you, that if a state has clearly said that by registering due business, you're consenting, we'll accept that. And so then I think we're bound by whatever the state's done to date, rather than seeking out more intel. Yeah, I understand your concern, Your Honor. I would say that it is appropriate for an eerie guess, if there is any question. Like I said, I think Phillips is clear. I understand you may have a different point of view and different concerns about that. I do want to point out another quote from Dimon before I run out of time, and it's about International Shoe, and it's, I'm quoting here, International Shoe recognized, as well, that the commission of some single or occasional act of corporate agent in a state sometimes be enough to subject the corporation to jurisdiction in that state's tribunals with respect to suits relating to that in-state activity. So I think that's expressly recognizing, in Daimler, that consent-based jurisdiction, or activities of an agent in a state, a registered agent, can be enough. So it's very clear to me that Daimler- That's the consent plus that I asked your comment about. I think that's a great way to put it. I think the district court viewed it in characterizing the Cowan case as a mixed approach, and I think that that was discussed in DCS's brief that way. And again, I think Daimler is very distinguishable. It was a very narrow issue before Daimler. It had to do with imputation of facts of a corporate subsidiary, and is that enough to impute jurisdiction? And it had totally foreign parties, events occurring totally abroad. Here, on this dispute, it's all Louisiana-centric. All right, thanks to both of you for dealing with the issues that we have here in front of us today, and working this back into your schedules to appear. We are recessed until tomorrow at 9 a.m.